UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Sierra Club; The Wilderness Society; and
Center for Biological Diversity</u>,
    Plaintiffs

    v.                                                        Civil No. 07-cv-257-SM
                                                                    Opinion No. 2008 DNH 145
<u>Thomas Wagner, White Mountain National
Forest Supervisor; Abigail Kimball,
U.S. Forest Chief; United States Forest
Service; Edward T. Schafer, Secretary,
U.S. Department of Agriculture; and
U.S. Department of Agriculture</u>,
    Defendants


**O R D E R**


Plaintiffs, the Sierra Club, the Center for Biological Diversity (formerly, Forest Watch), and The Wilderness Society (collectively, the "Sierra Club"), brought this action under the Administrative Procedure Act seeking declaratory and injunctive relief.  Specifically, they sought a judicial declaration that defendants (collectively, the "Forest Service") violated the National Environmental Policy Act and the National Forest Management Act when they approved two forest resource management projects in the White Mountain National Forest: the Than Forest Resource Management Project (the "Than Project") and the Batchelder Brook Vegetation Management Project (the "Batchelder Brook Project").

By order dated June 6, 2008, the court denied the Sierra Club's motion for summary judgment and granted the Forest Service's motion for summary judgment.  On July 25, 2008, plaintiffs filed a notice of appeal and, four days later, they filed an Emergency Motion for a Stay Pending Appeal (document no. 61), by which they move the court to "issue an injunction pending appeal on the Than Brook [sic] and Batchelder timber sales, to prohibit logging, road construction and associated activities, until a final decision on the merits is made by the First Circuit Court of Appeals."  Plaintiffs' motion (document no. 61) at 3. Although such equitable relief is available from the court of appeals, a party must ordinarily seek such relief from this court first.  See Fed. R. App. P. 8(a).

**Standard of Review**

Although they disagree as to precisely what is required of a litigant seeking a stay pending appeal, the parties agree that the Supreme Court has articulated the four essential elements of the relevant test:

> Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal.  See Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc. 8(a).  Under both Rules, however, <u>the factors regulating the issuance of a stay are generally the same</u>: (1) whether the stay applicant has made a <u>strong showing that he is likely to succeed</u> on the

  merits; (2) whether the applicant will be irreparably
  injured absent a stay; (3) whether issuance of the stay
  will substantially injure the other parties interested
  in the proceeding; and (4) where the public interest
  lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987) (citations omitted) (emphasis supplied). The Forest Service asserts that the first prong of the test means precisely what is says – plaintiffs bear the burden of making a strong showing that they are likely to prevail on appeal. The Sierra Club, on the other hand, claims "[t]he first prong of this test has not been interpreted or applied literally," plaintiffs' memorandum (document no. 61-2) at 3, and a party appearing before the district court and seeking a injunction pending appeal need only show that the "appeal raises serious and difficult question of law in an area where the law is somewhat unclear," id. at 4.[1]

 The Sierra Club's view of the governing law is not consistent with Supreme Court or circuit precedent and its arguments to the contrary are misguided. First, plaintiffs' notion that a party seeking a stay pending appeal in the district

---

[1] The cases cited by the Sierra Club for this proposition of law are unpersuasive. They include opinions from the Courts of Appeals for the Fifth Circuit and the Eleventh Circuit that pre-date Hilton, and an opinion from the United States District Court for the District of Massachusetts that, although issued after Hilton, makes no mention of it and, instead, relies entirely upon pre-Hilton precedent.

3

court bears a less substantial burden than a party seeking the same relief from the court of appeals is at odds with the Supreme Court's discussion in Hilton.  As noted above, the Court stated that, although the governing rules in the appellate court and the district court are different, "the factors regulating the issuance of a stay [pending appeal] are generally the same."  481 U.S. at 776.

Consistent with the Supreme Court's statement of the relevant law in Hilton, the Court of Appeals for the First Circuit has held that:

> The sine qua non of the stay pending appeal standard is whether the movants are likely to succeed on the merits.  In essence, the issuance of a stay depends on whether the harm caused [movants] without the stay, in light of the [movants'] likelihood of eventual success on the merits, outweighs the harm the stay will cause the non-moving party.

Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 16-17 (1st Cir. 2002) (citations and internal punctuation omitted), criticized on other grounds by Rodriguez-Vasquez v. Lopez-Martinez, 345 F.3d 13 (1st Cir. 2003).  See also Elias v. Sumski (In re Elias), 182 Fed. Appx. 3, 4, 2006 WL 1514314, 1 (1st Cir. June 2, 2006) (citing Acevedo and noting that "the courts below properly applied the traditional four-part standard applicable to preliminary injunctions in determining whether to grant a stay

pending appeal" and rejecting the appellant's argument that "the lower courts should have given greater weight to the balance of harms – as opposed to the [appellant's] likelihood of success on appeal").[2]

---

[2] In an effort to distinguish Elias, the Sierra Club says the plaintiff in that case "mistakenly stipulated to that [i.e., the Hilton four part] standard in the district court," – a proposition that is entirely without support in the written decision of the court of appeals. More troubling, however, is the Sierra Club's assertion that the Elias court actually embraced (and applied) the "serious and difficult question of law" standard advocated by the Sierra Club, rather than the "strong showing of success on the merits" standard articulated in Hilton. In support of that erroneous interpretation of Elias, the Sierra Club says the following:

> And the Court of Appeals actually applied a "substantial question" test to the issue of injunction pending appeal, stating: "Although the appellant has not filed a motion for a stay pending appeal in this court, his brief seeks such relief and alleges that he will be irreparably harmed without it. <u>Because we find that this appeal presents no substantial question</u>, see 1st Cir. R 27(c), we proceed to the merits."

Plaintiff's reply memorandum (document no. 65) at 3 (quoting Elias) (emphasis in plaintiff's memorandum). Plainly, however, the local rule cited by the court of appeals addresses a <u>procedural</u> issue (that is, the summary disposition of a motion if it "is clear that no substantial question is presented," 1st Cir. L.R. 27(c)) and <u>not</u> the substantive legal standard applicable to the issuance of a stay pending appeal. This is not the first time in this proceeding that plaintiffs' counsel has misstated precedent. In the future, counsel should exercise greater care when making representations to the court.

**Discussion**

Applying the governing four-part test to the circumstances presented in this case, the court concludes that the Sierra Club has failed to demonstrate that it is entitled to a stay pending appeal of this court's order dated June 6, 2008. First, plaintiffs have not made a "strong showing that [they are] likely to succeed on the merits." Hilton, 481 U.S. at 776. Even if the court were to apply the more lenient test advocated by the Sierra Club – that is, whether there is a "serious and difficult question of law" – it still would not have borne its burden. While the court acknowledges the differences of opinion among the circuits over the issue of whether site-specific projects must be reviewed under the same regulations that guided the establishment of the Forest Plan, the legal debate on that issue, at least in the context of the facts presented in this case, is decidedly one-sided and, in the court's view, the issue does not present a "difficult question of law." The Sierra Club's assertion that "many courts have held that even after the 2000 regulations[,] the 1982 regulations continue to apply to site-specific projects," plaintiffs' memorandum (document no. 61) at 6, is not terribly persuasive since the "many courts" referenced in the Sierra Club's memorandum actually consists of one: the Court of Appeals for the Ninth Circuit. And, it probably bears noting that one of the opinions from the Ninth Circuit upon which

plaintiffs heavily relied during the course of this litigation and upon which they now rely in seeking a stay pending appeal – <u>Ecology Center v. Austin</u>, 430 F.3d 1057 (9th Cir. 2005) – has been overruled.  <u>See</u> <u>The Lands Council v. McNair</u>, __ F.3d __, 2008 WL 264001 (9th Cir. July 2, 2008) (en banc).

The Court of Appeals' en banc opinion in <u>McNair</u> is significant not only because it overruled the panel opinion in <u>Ecology Center</u>, but also because it addresses an issue at the very core of this litigation (and, no doubt, the Sierra Club's appeal) – that is, the appropriate standard of review this court should employ when reviewing decisions rendered by the Forest Service and the amount of deference to which such agency decisions are entitled.  In <u>McNair</u>, the en banc court observed that the plaintiff:

> asks this court to act as a panel of scientists that instructs the Forest Service how to validate its hypotheses regarding wildlife viability, chooses among scientific studies in determining whether the Forest Service has complied with the underlying Forest Plan, and orders the agency to explain every possible scientific uncertainty.

<u>Id</u>. at *4.  Importantly, however, the court then went on to hold that:

> [T]his is not a proper role for a federal appellate court.  But [plaintiff's] arguments illustrate how, in

>     recent years, our environmental jurisprudence has, at
>     times, shifted away from the appropriate standard of
>     review and could be read to suggest that this court
>     should play such a role.

Id. The opinion in McNair is plainly one of the most significant environmental decision issued by the Court of Appeals for the Ninth Circuit in recent years.  Among other things, it acknowledges that that court's environmental jurisprudence, as expressed in various panel opinions over time, has embraced the notion that federal courts should engage in a far more active role in the oversight of forest management than is legally appropriate.  That opinion also reaffirms the limited and highly deferential standard of review that courts must employ when asked to review decisions rendered by the Forest Service.  Additionally, it either overrules or substantially undermines several prominent panel opinions upon which plaintiffs continue to rely heavily in this litigation, including at least one plaintiffs have invoked in support of their motion for a stay pending appeal.

As for the remaining three factors identified in the Hilton opinion, the court need not address them in detail as they are thoroughly and persuasively discussed in the Forest Service's memorandum.  The court simply notes that, while it is aware that aspects of the Than and Batchelder Brook projects involve timber

8

cutting, it is also conscious of the fact that the mere existence of potential environmental harm, standing alone, does not necessarily compel the conclusion that there will be "irreparable injury."  See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 544-45 (1987).  As the McNair court has observed:

> [T]he Supreme Court has instructed us that "environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable.  If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction."  But, the Supreme Court has not established that, as a rule, any potential environmental injury merits an injunction.

2008 WL 2640001 at * 20 (citing Amoco, 480 U.S. at 545).  The en banc panel in McNair went on to conclude that:

> Our law does not, however, allow us to abandon a balance of harms analysis just because a potential environmental injury is at issue. . . . Accordingly, we decline to adopt a rule that *any* potential environmental injury *automatically* merits an injunction, particularly where, as in this case, we have determined that the plaintiffs are not likely to succeed on the merits of their claims.

Id. at *21 (emphasis in original).

In this case, the court must consider not only the potential environmental harm at issue should it deny plaintiffs' request for a stay, but also the harm associated with undermining and frustrating a well thought-out and publically vetted

comprehensive forest management plan, as well as the economic harm that will result if such a stay is granted (an issue persuasively addressed in the Forest Service's memorandum, and the attached declarations of Richard Alimi and Roger Boyer). The court must also consider the public's interest in seeing that the Forest Plan for the White Mountain National Forest is implemented in a timely and efficient manner, under the direction of the Forest Service. As the Forest Service points out, the site-level projects at issue in this case are the result of thorough and comprehensive planning and have been designed to improve wildlife habitat diversity and quality, fisheries habitat quality, forest health, and recreation opportunities – all issues of substantial interest to the public, and all issues that have been balanced along with timber management in the plan.

## Conclusion

Having carefully considered the four relevant factors identified in <u>Hilton</u>, the court concludes that the equities weigh in favor of denying plaintiffs' request for a stay pending appeal. Accordingly, for the foregoing reasons, as well as those set forth in the Forest Service's memorandum (document no. 64), the Sierra Club's Emergency Motion for a Stay Pending Appeal (document no. 61) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 15, 2008

cc:  John T. Alexander, Esq.
     Anthony I. Blenkinsop, Esq.
     John S. Harbison, Esq.
     Kristin A. Henry, Esq.
     Cynthia S. Huber, Esq.
     Eric E. Huber, Esq.
     Bradford W. Kuster, Esq.
     Jared M. Margolis, Esq.